Manufacturers' Association of Erie, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent; The City of Erie, Intervenor.

32

Argued September 12, 1979, before President Judge Bowman and Judges Crumlish, Jr., Mencer, Rogers, Blatt, DiSalle and Craig. Judges Wilkinson, Jr. and MacPhail did not participate.

*Timothy F. Nicholson,* for petitioner.

*Edward Munce,* Assistant Counsel, with him *Steven A. McClaren,* Deputy Chief Counsel and *George M. Kashi,* Chief Counsel, for respondent.

*Marilyn C. Fisher,* Assistant City Solicitor, for intervenor.

OPINION BY JUDGE MENCER, October 29, 1979:

On June 26, 1974, the City of Erie-Bureau of Water (Erie) filed with the Pennsylvania Public Utility Commission (Commission) Tariff Water-Pa. P.U.C. No. 3, to become effective September 1, 1974, proposing changes in its rates which are uniformly applicable to water service provided inside and outside the corporate limits of the City of Erie.

On August 16, 1974, the Manufacturers' Association of Erie (Association) filed a formal complaint against this proposed rate increase. The Association alleged that the proposed changes would increase water rates "for all consumers by 25%, except for consumers of bulk water over 500,000 cubic feet per quarter which has been increased 32.7%" and thus the proposed increases were discriminatory and illegal. The Commission permitted the proposed rates to go into effect on September 1, 1974.

Following the filing of an amended complaint and two days of hearing, the Commission adopted an order dismissing the complaint filed by the Association. The order was entered on July 26, 1978 and this appeal followed. We affirm.

Although the scope-of-review provisions of Section 1107 of the Public Utility Law[1] were deleted by Section 20 of the Act of October 7, 1976, P.L. 1057, we have held that our scope of review remained the same as it was under Section 1107 and case law decided thereunder. *Pennsylvania Gas & Water Co. v. Pennsylvania Public Utility Commission,* 33 Pa. Commonwealth Ct. 143, 381 A.2d 996 (1977). Our review is by this standard limited to a determination of whether constitutional rights have been violated, an error of

---

[1] Act of May 28, 1937, P.L. 1053, *as amended, formerly* 66 P.S. §1437, repealed by Section 2(a) of the Judiciary Act Repealer Act, Act of April 28, 1978, P.L. 202, 42 P.S. §20002(a) [1189], and Section 2(a) of the Act of July 1, 1978, P.L. 598, 66 Pa. C.S.A. Reps.

law has been committed, or whether the findings, deteminations, or order of the Commission is supported by substantial evidence.

A reading of the record discloses that the Association is not contending that the overall revenues allowed by the Commission order are unreasonable or excessive. The Association's amended complaint specifically challenges only the 32.7-percent increase for usage of more than 500,000 cubic feet of water per quarter, asserting that the increase should, like the lesser blocks, not exceed 25 percent.

Initially, we note that the burden of proving that the rate complained of is discriminatory or unreasonable is on the Association. *Deitch Co. v. Pennsylvania Public Utility Commission*, 204 Pa. Superior Ct. 102, 203 A.2d 515 (1964). Further, a mere difference in rates among classes of customers is not a violation of the Public Utility Law,[2] and the Commission is invested with a flexible limit of judgment. The requirement is merely that rates for one class of service shall not be unreasonably prejudicial and disadvantageous to a patron in any other class of service. Before a rate can be declared unduly preferential and therefore unlawful, it is essential that there be not only an advantage to one, but a resulting injury to another. *Alpha Portland Cement Co. v. Public Service Commission*, 84 Pa. Superior Ct. 255 (1925).

In the instant case, the Association's charge of a discriminatory or unreasonable rate for users of more than 500,000 cubic feet of water per quarter has not been proven. The record bears out that the Commission correctly concluded that the actual cost to serve a customer 100 cubic feet of water would exceed the end block rate of $0.13 per 100 cubic feet of water about which the Association complains. The Associa-

---

[2] *Formerly* 66 P.S. §§1101-1562, repealed by Section 2(a) of the Act of July 1, 1978, P.L. 598, 66 Pa. C.S.A. Reps.

tion's computations relative to the cost of producing water incorrectly deducted from production plant the portion allocated to fire service. More significantly, when computing the minimum cost at which water should be sold, the Association did not include the costs associated with transmitting water nor an allocated portion of the capital costs associated with investment in general utility plant. These costs need be included in estimating the minimum cost at which water should be sold and, if the Association would have considered them in the instant case, they would have reached the same conclusion as did the Commission; namely, that the actual cost of water would exceed the end block rate of $0.13 per 100 cubic feet of water. Such a conclusion understandably evaporates the Association's contention that the size of the rate increase to large users is unwarranted and is dispositive of the sole issue raised by the Association in this appeal.[3]

Since our examination of the record reveals that the rate structure complained of by the Association is not discriminatory or unlawful and that the order of the Commission is supported by substantial evidence, we therefore make the following.

---

[3] The Association's brief raised, for the first time, an issue concerning Erie's failure to place of record an allocation of expenses and property as to customers located or residing inside the City of Erie and those customers that are outside the city limits. Relying on *Ambridge Borough v. Pennsylvania Public Utility Commission*, 137 Pa. Superior Ct. 50, 8 A.2d 429 (1939), the Association argues that Erie's failure in this regard resulted in a vital flaw in Erie's case, with the consequence that Erie failed to meet its burden of proving that the proposed rates were just and reasonable. However, *Ambridge* involved different sets of rates, one set applying to customers inside and another set applying to customers outside the geographical limits of the Borough. In the instant case, a single set of rates is applicable to all customers. Thus, we deem *Ambridge* to be inapposite here and this issue to be not only without merit but also not properly before this Court. *See* Pa. R.A.P. 1551(a).

36

## ORDER

AND Now, this 29th day of October, 1979, the Pennsylvania Public Utility Commission's order, adopted May 23, 1978 and entered July 26, 1978, dismissing the complaint filed by the Manufacturers' Association of Erie to a proposed rate increase filed by the City of Erie-Bureau of Water on June 26, 1974, is hereby affirmed.