96

Fairview Water Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued October 9, 1980, before Judges MAC PHAIL, WILLIAMS, JR. and PALLADINO, sitting as a panel of three.

*Blake C. Marles, Butz, Hudders & Tallman,* for petitioner.

*John F. Povilaitis,* Assistant Counsel, with him *Shirley Rae Don,* Deputy Chief Counsel, and *Joseph J. Malatesta, Jr.* and *George M. Kaski,* Chief Counsels, for respondent.

OPINION BY JUDGE PALLADINO, December 3, 1980:

This is an appeal from an order of the respondent Pennsylvania Public Utility Commission (Commission) sustaining the complaint of two customers of a private water utility and directing the utility to provide water service and to capitalize at its own expense, with exceptions described below, an installed service line. We affirm.

A formal complaint was filed by two residents of the Greater Mount Pocono area against petitioner (Company). The problem raised in the complaint was the alleged refusal of the Company to give the residents water service. The Commission Trial Staff filed its Notice of Intention to Participate in the matter and contended that the Company should be assessed civil penalties pursuant to Section 3301 of the Public Utility Code (Code), 66 Pa. C. S. §3301, for the Company's conduct in response to the residents' original request for service and for the Company's stance on the question of customer contributions. By its answer to the complaint, the Company raised the question of its right to require customer contribution for the extension of water service to the residents; in the proceedings below the Company further raised the issue of the Commission's power to mandate the location of service lines to customers.

In autumn 1978 and winter 1979 the residents had difficulty securing water service from the Company. Much of the problem stemmed from disagreements

over the proper location of the service line and on customer contribution. A staff engineer in the Commission's Bureau of Consumer Services tried to informally resolve the residents' service problem. The staff engineer recommended that service be provided through the side of the residence. The Company asserted that the service line should go to the front of the residence (which the Company president testified would require an extension of the existing main).

In late March 1979 the staff engineer informed the Company that a main extension was not necessary to service the residents and that the Company could not charge the residents for lateral extensions. The residents' formal complaint was filed on May 8, 1979. By the time hearings in the case commenced in June 1979, the Company's service line from its main to the side curb of the residents' property had been installed,[1] as had the residents' portion of the service line from the curb to their home. The amount of contribution the Company could demand from the residents for the installation of the Company's service line to the curb remained as a matter of dispute.[2]

The Initial Decision of the Administrative Law Judge F. Ross CRUMLISH was entered July 30, 1979. The Initial Decision did not order any civil penalties but did prohibit the Company from requiring contributions from the residents for any facilities it installed, except for the meter setter, meter box, meter box lid and labor associated with the installation of those three items. Exceptions to the Initial Decision were filed by the Company and by the Commission Trial Staff; all exceptions were denied. Upon appeal to the Commission, the Commission adopted as its

[1] The total expense of establishing a service line from the Company's main to the residents' property was estimated to be $1,081.12.

[2] The anticipated annual net return from the hookup is $14.00.

own the Initial Decision and the administrative law judge's ruling on the exceptions.

In this case, our review is limited to a determination of whether constitutional rights have been violated, an error of law has been committed, or whether the findings, determinations, or orders of the Commission are supported by substantial evidence. *Manufacturers' Association of Erie v. Pennsylvania Public Utility Commission,* 47 Pa. Commonwealth Ct. 31, 407 A.2d 114 (1979).

The major issue for our consideration is whether the Commission's order is arbitrary, capricious and unreasonable in that it requires the Company to lay the new line at its own expense.

> The general rule that the cost of repairs and improvements is to be borne by the utility is based upon the statutory requirement that the utility provide reasonable and adequate service. Section 1501 of the Public Utility Code, 66 Pa. C. S. §1501. Colonial Products Co. v. Pennsylvania Public Utility Commission, 188 Pa. Superior Ct. 163, 171, 146 A.2d 657, 662 (1958). In special circumstances, participation by the customers may reasonably be expected.

*McCormick v. Pennsylvania Public Utility Commission,* 48 Pa. Commonwealth Ct. 384, 387, 409 A.2d 962, 964 (1980). The Commission may require customers to participate in construction costs where "without the contribution or loan of the customers, the cost of construction would materially handicap the utility in securing a fair return on all its operations" or where the consuming public would be unduly burdened by the full cost being borne by the utility. *Ridley Township v. Pennsylvania Public Utility Commission,* 172 Pa. Superior Ct. 472, 479, 94 A.2d 168, 171 (1953).

The Company contends that it fits within the first set of special circumstances set out in *Ridley Township, id.* The Company emphasizes that the cost of construction for the hookup in the instant case was approximately 1.8% of gross yearly revenue and that the return on this investment ($14.00 per year) constitutes a rate of return of less than 1.3% per year. Our independent review of the record leads us to conclude that the Company has not set out a case demonstrating that the cost of this extension of its facilities handicaps the Company's overall rate of return.

> If a portion of the territory served is not profitable, but the entire service produces a fair return on the investment, the utility may still be required to serve the unprofitable portion, if the rendering of such service does not result in an unreasonable burden on its other service.

*Ridley Township, supra* at 478, 94 A.2d at 171.

The Company also contends that its case fits within the second set of special circumstances set out in *Ridley Township.* The Company submits that if it must absorb the entire cost of the construction of service laterals to the residents' and other customers' curbs, it will have to seek a customer rate increase of 1% per customer, its first rate request since 1974. We must again agree with the Commission that the record shows no support for this conclusion. Additionally, the Company is entitled by Section 1301 of the Code, 66 Pa. C. S. §1301, to a just and reasonable rate of return and may pursue such rate relief; its reluctance to do so does not meet the criteria in *Ridley Township.*

We further note that Paragraph 2 of the Company's Rules and Regulations, as part of its official tariff supplement, assigns to the Company the ex-

pense of the service line from the main to the curb line of the customers' property.[3]

The Company also raises the matter of the Commission staff engineer's role in the determination of the location of the service line to the residents' property. The Company contends that the staff engineer "insisted" and "directed" that the Company install the water service from the side of the resident's home and that such conduct was an abuse of the Commission's power. This Court recognizes that a utility normally has the initial prerogative to select the routes for its lines. In the instant case, our review of the record satisfies us that the staff engineer's conduct was consistent with the purview of the Bureau of Consumer Services under Section 308(d) of the Code, 66 Pa. C. S. §308(d); that the staff engineer was merely advising the Company while the dispute with the residents was at an informal stage; and that the Company's decision to follow the staff engineer's recommendation was voluntary. We find no merit in any of the Company's arguments.

Accordingly, we will enter the following

ORDER

AND Now, December 3, 1980, the order of the Pennsylvania Public Utility Commission at Docket No. C-79050903, dated November 19, 1979, is affirmed.

---

[3] As stipulated below by the Company and the Commission Trial Staff, Paragraph 2 of the Company's Rules and Regulations, in Supplement No. 24 to Water—Pa. P.U.C. No. 4, First Revised Page No. 5, reads:

> The company shall at their [sic] expense install and maintain service line from the main to the curb including stop cock and curb box, and the service line from the curb to the premises including all piping and connection of fixtures shall be installed and maintained by the applicant for service connection.