**Leonard J. Bodack, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.**

Argued November 17, 1982, before Judges ROGERS, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*Albert D. Brandon,* for petitioner.

*Charles F. Hoffman,* Chief Counsel, with him *Daniel P. Delaney,* Deputy Chief Counsel, for respondent.

*W. Russell Hoerner,* for intervenor, Pennsylvania Electric Association and Pennsylvania Power Company.

OPINION BY JUDGE ROGERS, January 28, 1983:

By means of a Petition for Review in the nature of an application for a writ of prohibition, addressed to our original jurisdiction, Leonard J. Bodack seeks an order prohibiting the Pennsylvania Public Utility Commission from effectuating in the context of pending and future public utility rate proceedings, its "Policy Statement; Procedure for Implementing Normalization of Federal Income Tax Benefits of Accelerated Cost Recovery System,"[1] adopted by the Commission following a public hearing conducted on

---

[1] The process of normalization here at issue is, by all accounts, an artifact of the Federal Income Tax Laws which permits a deduction from taxable income of a reasonable amount representing the depreciation over time of the value of business property. In its simplest form the amount of the annual depreciation deduction is equivalent to the corresponding concept for accounting purposes and is the value of the property when acquired minus its salvage value divided by the number of years of its useful life. Accelerated depreciation refers to a number of schemes authorized by the tax code in order to pusue various economic policies including the encouragement of plant expansion and modernization whereby a disproportionately large fraction of the total depreciation deduction is permitted to offset the taxpayer's income in the early years of an asset's useful life. "Normalization" in the context of accelerated depreciation deductions is defined in Section 168(e)(3)(B) of The Internal Revenue Code. 26 U.S.C. §168(e)(3) as follows:

   (B) Use of normalization method defined. For purposes of subparagraph (A), in order to use a normalization method of accounting with respect to any public utility property—
   (i) the taxpayer must, in computing its tax expense for purposes of establishing its cost of service for ratemaking purposes and reflecting operating results in its regulated books of account, use a method of depreciation with respect to such property that is the same as, and a deprecia-

April 22, 1982, promulgated in Volume 12, Number 20 of the Pennsylvania Bulletin at pages 1565-1568,

tion period for such property that is no shorter than, the method and period used to compute its depreciation expense for such purposes; and

(ii) if the amount allowable as a deduction under this section with respect to such property differs from the amount that would be allowable as a deduction under section 167 (determined without regard to section 167(1)) using the method (including the period, first and last year convention, and salvage value) used to compute regulated tax expense under subparagraph (B)(i), the taxpayer must make adjustments to a reserve to reflect the deferral of taxes resulting from such difference.

The parties appear to agree that the process of normalization involves the receipt by utilities of rates in part calculated with reference not to actual tax expense which, through the use of accelerated depreciation, has been reduced, but with reference to a higher, fictitious or "normalized" tax expense and the concomitant creation of a reserve reflecting the utility's future liability to pay increased taxes as the amount of the deduction decreases in the later years of an asset's life.

The Commission contends that the Congress conditioned the availability to public utilities of certain accelerated depreciation deductions on the use by the utility of normalization because, in the absence of normalization, today's ratepayers pay less than their share of the depreciation in value of the utility's assets. That is, if the current rates directly reflect a lower tax expense due to the current availability of a disproportionately large fraction of the total depreciation deduction then current rates will fail to completely reflect the "real" decline in value of the utility's property and future ratepayers will be required to pay rates reflecting higher tax expense due to the availability at that time of a disproportionately small fraction of the total depreciation deduction. Normalization in the Commission's view, corrects this "distortion." The Commission further argues that the effect of normalization is to reduce rates because, although the total depreciation deduction and, therefore, the utility's revenue requirements remain the same under either an accelerated or a "straight-line" system of accounting, deferred taxes when normalized may be deducted from the utility's rate base, thereby reducing the cost of service to customers.

and intended to be codified as an appendix to Chapter 53 of Title 52 of the Pennsylvania Code. Now before us for consideration are the Commission's preliminary objections to Mr. Bodack's petition.

The averments, the factual verity of which for these purposes we accept, are that the petitioner[2] is a resident of the cities of Pittsburgh and Harrisburg; that he is a consumer of and rate-payer to five public utilities whose operations and rates are regulated by the Commission; that the Commission's policy statement referred to above permits regulated utilities to file revised rate tariffs employing a "normalization" method of accounting with respect to cer-

The petitioner's description of normalization in operation is much less sanguine. On the basis of evidence adduced at hearings before a committee of the Pennsylvania Senate, the petitioner contends that utilities have received in higher rates an aggregate amount of over 1.7 billion dollars intended to offset tax liabilities which are not now and may never be due and payable.

[2] Although there are no averments to this effect, we note that the petitioner is the Pennsylvania State Senator for the 38th Senatorial District in Allegheny County. Senator Bodack chaired, in August, 1980, hearings conducted by a special Senate committee appointed to investigate laws and regulations affecting taxation of public utilities. See Senate Serial No. 68, adopted November 14, 1979.

Our research further reveals that Senator Bodack is the prime sponsor of Senate Bill No. 1383, introduced in the 1982 session and referred on March 31, 1982 to the Senate committee on consumer protection and professional licensure. This bill, which proposes the addition of a Section 1315 to Chapter 13 of the Public Utility Code, having to do with rates and ratemaking, requires utilities to minimize tax expenses; prohibits a claim for purposes of ratemaking of any but current tax expenses; forbids tax normalization with certain specified exceptions; prohibits deferral of taxes unless certain specified standards are met; and requires that accumulated reserves be expeditiously distributed to the ratepayers. A similar bill obtained final passage in the Senate on September 30, 1980 and was referred to the finance committee of the House of Representatives.

tain accelerated depreciation deductions available with respect to a portion of the utilities' property for the purpose of calculating federal income tax expense; that, in this respect, the policy statement is responsive to a recent amendment to Section 168 of the Internal Revenue Code, 26 U.S.C. §168, authorizing the accelerated depreciation deductions only if the taxpayer utility employs such a normalization accounting method and has been authorized so to do by the terms of a Commission rate order determining cost of service which rate order becomes effective before January 1, 1983; that the use of normalization with respect to accelerated depreciation deductions was declared to be unlawful in *Pittsburgh v. Pennsylvania Public Utility Commission*, 182 Pa. Superior Ct. 551, 128 A.2d 372 (1956); that a special committee of the Senate of Pennsylvania has conducted hearings on the matter of the normalization of accelerated depreciation deductions by regulated utilities and has adduced evidence which establishes in the opinion of the petitioner that this practice has the effect of permitting utilities to propose and to obtain unreasonable and unlawful rate increases and to engage in various managerial improprieties including unwarranted expansion of capacity and disproportionate use in capitalization of preferred equity issues; that the Commission is not empowered by any provision of the Public Utility Code, 66 Pa. C. S. §§101-3315 to authorize the use of normalized accelerated depreciation deductions by utilities in support of their proposed tariffs; that the Commission failed to consider or to give appropriate weight to evidence that the use of normalized deductions will have an untoward effect on the financial well-being of Pennsylvania public utilities and on the utility rates paid by consumers; and that because "[a]ppeals

in individual rate cases would be so numerous, [and] so time-consuming, as to not provide an efficient method of curtailing this practice,'' the issuance of the requested writ of prohibition ''provides the only means by which these unfair, unjust and illegal utility rates will be stopped.''

The petitioner does not allege that any of the public utilities of which he is a customer have filed a proposed tariff containing rates which are sought to be justified with reference to the accounting method set forth in the policy statement or that any such proposed tariff has been approved or that he is required as a direct or indirect result of the policy statement to pay higher utility rates than would otherwise have been the case.

The Commission, by preliminary objection,[3] contends that this is not a proper case for prohibition because the averments do not call into question the jurisdictional capacity of the Commission to act in the matter of a utility's use of tax normalization, but, instead, challenge the wisdom and legality of the Commission's action—issues more properly raised by appeal from the Commission's order or by intervention in the rate proceeding of a utility of which the petitioner is a consumer and which seeks, in part, to support a rate proposal by reference to normalized tax expenses. We agree.

A writ of prohibition will issue only in the clearest cases of action by an inferior tribunal in usurpation of its lawful jurisdiction. *Carpentertown Coal &*

---

[3] The failure of the petitioner to include in his Petition for Review a statement of this Court's jurisdiction prompted the respondent to file a Motion to Quash as well as Preliminary Objections. Since the Petition is addressed to our original jurisdiction, see our order filed July 30, 1982 in the matter of the petitioner's application for preliminary relief, we have dealt with only the respondent's preliminary objections.

*Coke Co. v. Laird,* 360 Pa. 94, 100, 61 A.2d 426, 428 (1948); *Robertshaw Controls Company v. Commonwealth of Pennsylvania, Human Relations Commission,* 67 Pa. Commonwealth Ct. 613, 447 A.2d 1083 (1982). We reject the petitioner's assertion that the matter of tax normalization is without the Commission's jurisdiction. On the contrary, the detailed consideration of the expenses and revenues of public utilities for the purpose of setting their just and reasonable rates is an enterprise at the very center of that area of regulation concerning which broad powers have been delegated to the Commission by the legislature. Section 501(b) of the Code, 66 Pa. C. S. §501(b) provides that

> The commission shall have general administrative power and authority to supervise and regulate all public utilities doing business within this Commonwealth. The commission may make such regulations, not inconsistent with law, as may be necessary or proper in the exercise of its powers or for the performance of its duties.

Section 1301 of the Code, 66 Pa. C. S. §1301 requires the rates of public utilities to be just and reasonable and to be in conformity with regulations and orders of the Commission. Section 1308(d) of the Code, 66 Pa. C. S. §1308(d) requires the Commission to investigate the reasonableness of any proposed general rate increase which reasonableness, as is made clear by such provisions as Section 1310(d), is to be determined with reference to the utility's constitutional right to a fair return on the fair value of its property used and useful in the public service. Section 1703 of the Code, 66 Pa. C. S. §1703 requires each public utility to carry on its books of account a reasonable reserve representing the annual depreciation

of its property included in the rate base, requires each utility to file with the Commission a detailed supporting explanation of its accounting method in this regard, and, in subpart (c), expressly provides that the Commission shall not be bound by these accounting methods for rate-making purposes.

*Pittsburgh v. Pennsylvania Public Utility Commission*, 182 Pa. Superior Ct. 551, 128 A.2d 372 (1956), relied on by the petitioner, in fact supports the Commission's contention that the matter of whether to permit tax normalization is within the Commission's regulatory domain. In *Pittsburgh* the Superior Court upheld the Commission's determination to disallow retention by a utility of tax benefits resulting from its use of accelerated depreciation newly authorized by the Internal Revenue Code of 1954. The Court rejected the utility's arguments that Congress intended that the funds saved by reason of accelerated depreciation must, as a matter of law, be used by industry for expansion and modernization and that the Commission's failure to normalize the tax was unconstitutional as a violation of the supremacy clause, concluding that ''the Internal Revenue Code of 1954, certainly did not intend to usurp or qualify the commission's delegated authority to regulate public utility rates, which is derived from the police power of the state. . . .'' The Court further held:

> [T]he discretion to use or not to use accelerated depreciation under the 1954 Code is solely with the utility as a taxpayer. The Pennsylvania Public Utility Commission, however, does exercise control over the amount which it will allow the utility for taxes for rate purposes the same as it does over any other annual allowance for expenses.

*Id.,* at 577-578, 128 A.2d at 383-384.

Indeed, as the petitioner acknowledges, the proper treatment both of depreciation and of federal tax expense is an important and often disputed element of a utility's tariff filing. It is rather late in the day to propose that the whole matter of the treatment of a utility's accelerated depreciation deductions is beyond the Commission's purview; a proposition which, if correct, would be equally available to invalidate a Commission order *prohibiting* the normalization of such deductions—just the Commission's action which the petitioner would now have this Court require.

We believe that the petitioner raises serious questions not as to the Commission's jurisdiction but as to the legality and wisdom of its action. These questions cannot be resolved in the context of this extraordinary proceeding, however, but must await further action by the Commission in which the statement of policy is effectuated by, for example, the approval of a proposed tariff containing rates which are, in part, justified by reference to the accounting method described in the policy statement. The factual evidence and legal arguments set forth in great detail in the petitioner's Petition and written argument before this Court may be presented at that time to the Commission for initial consideration and resolution by that expert body. If the resolution of these issues is adverse to the petitioner, a complete review of the Commission's decision can then be had by an appeal to this Court in which the factual record and applicable authorities will be thoroughly examined. We could not, even if we would, give controlling weight to the petitioner's unsupported and prospective assertions that his concerns will not receive a fair hearing in the administrative forum.

Preliminary objection granted; Petition dismissed.

ORDER

AND Now, this 28th day of January, 1983, the preliminary objection in the nature of a demurrer of the respondent Pennsylvania Public Utility Commission is granted and the Petition for Review in the nature of an application for a writ of prohibition of Leonard J. Bodack is dismissed.