In Re: Central Storage & Transfer Co. of Harrisburg and W. C. McQuaide, Inc., Petitioners *v.* Pennsylvania Public Utility Commission, Respondent.

Samuel J. Lansberry, Inc., Petitioner v. Pennsylvania Public Utility Commission, Respondent.

A. Duie Pyle, Inc. et al., Petitioners *v.* Pennsylvania Public Utility Commission, Respondent.

John E. Brown et al., Petitioners *v.* Pennsylvania Public Utility Commission, Respondent.

Brocious Trucking, Inc. et al., Petitioners *v.* Pennsylvania Public Utility Commission, Respondent.

Parks Moving & Storage, Inc. et al., Petitioners *v.* Pennsylvania Public Utility Commission, Respondent.

Bob Young Trucking, Inc. et al., Petitioners *v.* Pennsylvania Public Utility Commission, Respondent.

Argued May 12, 1983, before Judges WILLIAMS, JR., CRAIG and DOYLE, sitting as a panel of three.

22

*Christian V. Graf*, with him *David H. Radcliff*, *Graf, Knupp & Andrews, P.C.*, for petitioners, Central Storage & Transfer Co. of Harrisburg, W. C. McQuaide, Inc., and Samuel J. Lansberry, Inc.

*James W. Patterson*, with him *Edward L. Ciemniecki, Rubin, Quinn & Moss*, for petitioners, A. Duie Pyle, Inc. et al.

*Thomas M. Mulroy, Pillar and Mulroy, P.C.*, for petitioners, John Brown et al.

*William J. LaVelle*, with him *John A. Vuono, Vuono, LaVelle & Gray*, for petitioners, Brocious Trucking, Inc. et al. and Parks Moving & Storage, Inc. et al.

*Alan Kahn, Abrahams & Loewenstein*, for petitioners, Bob Young Trucking, Inc. et al.

*Terrance J. Fitzpatrick*, Assistant Counsel, with him *James W. Patterson*, Assistant Counsel, *Alfred N. Lowenstein*, Deputy Chief Counsel, and *Charles F. Hoffman*, Chief Counsel, for respondent, Pennsylvania Public Utility Commission.

Opinion by Judge Williams, Jr., April 24, 1984:

The Pennsylvania Public Utility Commission (Commission) has moved to quash or dismiss seven consolidated appeals from the Commission's order to modify the substantive standards for adjudication of motor carrier applications. In support of its motion, the Commission contends that the Commission's order is not an "adjudication" under the Administrative Agency Law,[1] and that the petitioners, all motor carriers operating in Pennsylvania, have failed to show that they are "aggrieved persons" with standing to appeal. Before addressing the merits of the Commission's motion, we will set forth the background of this controversy.

At a public meeting held on July 16, 1982, the Commission proposed to modify its policy concerning the standards to be used to adjudicate applications by motor common carriers for operating authority.[2] Under then-existing standards, an applicant was required to establish (1) a public need for the proposed service; (2) the inadequacy of the existing service; and (3) its own technical, financial and legal fitness to undertake the proposed service.[3] The Commission proposed to alter the standards by eliminating the applicant's burden of showing the inadequacy of the existing service. Under the proposed standard, once an applicant had demonstrated public need or demand for the proposed service and its technical, financial and legal fitness, anyone opposing the granting of an application would assume the burden of showing that

---

[1] 2 Pa. C. S. §101-§754.

[2] The Public Utility Commission exercises authority to adjudicate applications for certificates of public convenience pursuant to §1103 of the Public Utility Code, 66 Pa. C. S. §1103.

[3] *See Lansberry v. Public Utility Commission*, 66 Pa. Commonwealth Ct. 381, 444 A.2d 832 (1982).

the entry of a new carrier would endanger the operation of an existing carrier to the extent that granting the application would be contrary to public interest. According to Commission documents, this proposed modification reflected the Commission's judgment that the existing standards were inappropriate with respect to motor carriers in that the carriers were not natural monopolies like those utilities for which the existing standards were primarily designed. Furthermore, the Commission expressed concern that the existing standards were too protectionist, anticompetitive, and economically wasteful as applied to motor carriers. Finally, the Commission considered the proposed standards more compatible with recent federal legislation and Interstate Commerce Commission policies toward motor carriers. (12 Pa. B. 4282)

The Commission published the proposed policy change in the Pennsylvania Bulletin (12 Pa. B. 2697), and invited comments from interested individuals and enterprises. Approximately fifty comments were submitted to the Commission. After consideration of these comments, the Commission, on November 19, 1982, concluded to modify the entry standards for common carriers, effective for applications filed after January 1, 1983.[4] Seven carriers appealed from the Commission's order adopting its new policy toward adjudication of motor carrier applications. Their challenge is, essentially, that the Commission does not possess jurisdiction to modify the legal standards which govern the adjudication of public utility applications. However, we will not reach this issue. The threshhold question which we address here by virtue of the Commission's motion is whether the Commission's order is appealable.

---

[4] Commission chairperson Susan Shanaman dissented from the order.

The Commission, in support of its motion to quash or dismiss the appeals, argues that the Commission's order was not an "adjudication", and, furthermore, that the petitioners are not "aggrieved." Accordingly, the Commission contends that the instant petitions for review fail to satisfy the requirements of Section 702 of the Administrative Agency Law.[5] Section 702 affords a right of appeal to "[a]ny person aggrieved by an adjudication of a Commonwealth agency who has a direct interest in such adjudication. . . ." The Commission argues that in promulgating new standards, it was acting in a quasi-legislative, rather than quasi-judicial capacity, and that such quasi-legislative action is not an adjudication within the meaning of Section 702 or within the definition articulated in Section 101 of the Administrative Agency Law,[6] which defines "adjudication" as:

> Any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made.

In response, the petitioners argue that whether or not the Commission's order constitutes an adjudication under the Administrative Agency Law is not dispositive of the cognizability of their appeals. They rely upon Section 5105 of the Judicial Code, 42 Pa. C. S. §5105, in contending that the Commission's order is appealable regardless of whether it qualifies as an adjudication. The Commission, on the other hand, contends that the petitioners' reliance on §5105 is misplaced, since subsection (e) of that provision limits an appellant to such relief as he would be entitled to

---

[5] 2 Pa. C. S. §702.

[6] 2 Pa. C. S. §101.

in an action in equity or for declaratory relief. The Commission argues that since the petitioners would not be entitled to an injunction or declaratory judgment against application of the new standards, §5105 offers no basis for an appeal.

We decline to enter this debate because we believe that, fundamentally, the disposition of the petition to quash turns on whether the petitioners constitute "aggrieved" persons. In other words, whether one looks to §702 of the Administrative Agency Law or to §5105 of the Judicial Code as the source of the right of appeal, the petitioners must show that they have a sufficient nexus to the controversy to afford them standing to challenge the Commission's order. Of course, §702 is explicit in requiring that appellants from administrative agencies be aggrieved by the agency's order. Whether an appellant is "aggrieved" pursuant to §702 is a question which necessarily invokes traditional concepts of standing. *In Re Application of El Rancho Grande, Inc.*, 496 Pa. 496, 437 A.2d 1150 (1981). And while §5105 does not expressly state that an appellant under that section must be aggrieved, there is no question that those who would rely upon that section must show that they meet the traditional tests for standing. The Pennsylvania Supreme Court stated in *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975) (plurality opinion) that ". . . one who seeks to challenge governmental action must show a direct and substantial interest. . . . In addition, he must show a sufficiently close causal connection between the challenged action and the asserted injury to qualify the interest as 'immediate' rather than 'remote.'" 464 Pa. at 202, 346 A.2d at 286. *Accord, In Re Application of the Family Style Restaurant,* Pa. , 468 A.2d 1088 (1983). The requirements of substantiality and immediacy apply regardless of whether the litigant is a

"person" or a "party." *See El Rancho Grande; Official Court Reporters, of The Court of Common Pleas of Philadelphia County v. Pennsylvania Labor Relations Board,* Pa. , 467 A.2d 311 (1983). Our review of the decisional authorities and the record in this case convinces us that the petitioners have not shown the requisite standing to prosecute these appeals.

The petitioners fail to show how the Commission's disposition of any specific request for operating authority has adversely affected substantial interest of theirs; rather, they attack the rationale or standards proposed to be employed by the Commission, and assert that the application of those standards *may* in the future affect their interest in minimizing competition against them. Not one of the petitioners has shown how the mere adoption of the new standards, without their application to any specific request for operating authority, directly threatens the value of its license. Indeed, it is possible that the petitioners might benefit from the new policy if they themselves were to file applications for additional operating authority. Thus, the petitioners assert only the potentiality of harm; they have failed to demonstrate the likelihood of *immediate* harm as is prescribed by the decisional authority. *See Wm. Penn Parking Garage; In Re Application of the Family Style Restaurant.*

This case offers no analog to the interests which were present in *Independent State Store Union v. Pennsylvania Liquor Control Board,* 495 Pa. 145, 432 A.2d 1375 (1981), where tavern owners, patrons of taverns and restaurants, and customers of state liquor stores were deemed "aggrieved" by the Liquor Control Board's adoption of a new pricing system. There, the Supreme Court found standing by virtue of the fact that the new pricing policy had the direct and immediate effect of increasing the price of merchan-

dise to the complainants. No similar impact on the petitioners' private interests has been demonstrated in this case.

Nor is this case analogous to *El Rancho Grande*, where the Pennsylvania Supreme Court held that individual tavern owners who sought to challenge the necessity of an additional liquor license in a resort area had standing under §702 of the Administrative Agency Law to appeal the Liquor Control Board's approval of a license application. There was in that case record evidence that one or more tavern owners would be driven out of business by the presence of an additional licensee. *El Rancho Grande; accord In Re Application of the Family Style Restaurant*. If and when any of the petitioners show that the Commission's grant of an application on the basis of the new standards directly and immediately threatens its license, a right of appeal is assured. *See Bodack v. Pennsylvania Public Utility Commission*, 71 Pa. Commonwealth Ct. 454, 455 A.2d 734 (1983).

The petitioners argue that if their appeal is quashed, they will be forced to intervene in each carrier application in order to insure review of the new standards. While we think the petitioners overstate the litigational burden which would flow from our quashing their appeals, even if they accurately characterize the burden, the prospect of future litigation does not constitute the type of immediate harm which affords one standing to appeal. *See Pennsylvania Cable Television Association v. Pennsylvania Public Utility Commission* (No. 2035 C.D. 1982, filed November 24, 1982), *aff'd per curiam*, 501 Pa. 608, 462 A.2d 667 (1983).

Accordingly, we hold that the petitioners are not "aggrieved", and do not have standing to challenge the Commission's order. The Commission's motion to quash or dismiss the petitions for review is granted.

## Order

AND Now, this 24th day of April, 1984, the Motion of the Public Utility Commission to quash or dismiss the within appeals is granted.