Middletown Township, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

The Newtown Artesian Water Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

192

Argued June 6, 1984, before Judges WILLIAMS, JR., BARRY and BLATT, sitting as a panel of three.

*Marcel L. Groen,* for petitioner, Middletown Township.

*D. Mark Thomas,* with him, *Charles E. Thomas, Thomas & Thomas,* for petitioner/intervenor, The Newtown Artesian Water Company.

*Charles F. Hoffman,* Chief Counsel, with him, *Barbara S. Kahoe,* Assistant Counsel, *Louise A. Knight,* Deputy Chief Counsel, for respondent.

*William E. Zeiter, Morgan, Lewis & Bockius,* for Amicus Curiae, National Association of Water Companies, Pennsylvania Chapter.

OPINION BY JUDGE BARRY, September 21, 1984:

Before us are two petitions for review of an order of the Pennsylvania Public Utility Commission (Commission) adopted February 4, 1983, and entered February 23, 1983, (docketed at No. A-0010154).

On June 23, 1977, Middletown Township (Township) located in Bucks County, filed an application with the Commission for a certificate of public convenience as a necessary part of its effort to acquire that part of the water facilities of the Newtown Artesian Water Company (Water Company) located within Middletown Township. The application was brought under Section 34(7) of the Corporation Act of April 29, 1874, P.L. 73, 15 P.S. §3202 (1874 Act), under

which a municipality has the right to acquire, despite objection, the facilities of a utility incorporated under the 1874 Act and located within the municipality's boundaries.

The 1874 Act provides, in pertinent part, that:

It shall be lawful, at any time after twenty years from the introduction of water or gas, as the case may be, into any place as aforesaid, for the town, borough, city or district in which the said company shall be located, to become the owners of said works, and the property of said company, by paying therefor the net cost of erecting and maintaining the same, with interest thereon at the rate of ten percentum per annum, deducting from said interest all dividends theretofore declared.

The Township's application specifically requested that the Commission: (1) issue a certificate of public convenience; (2) set the compensation to be paid by the Township to the Water Company for those facilities sought to be acquired; (3) verify the Township's ability to finance the acquisition; and (4) authorize the Township to provide water service to the public in that portion of the Township then being served by the Water Company.

Newtown Artesian Water Company was incorporated under the 1874 Act and operates an integrated water supply and distribution system providing water service to the Borough of Newtown, Newtown Township, and the northern portion of Middletown Township.[1] At the time of the Township's application, the Water Company was serving eighteen customers in

---

[1] Newtown Artesian Water Company's right to carry on its activities within the northern portion of Middletown Township was acquired on December 31, 1931, when the Public Service Commission approved the sale of the Middletown Township Water Company franchise to the Newtown Artesian Water Company.

Middletown Township, among which were the Water Company's two largest customers, St. Mary's Hospital and George School. The Water Company also had contractual commitments to serve several new developments then under construction in Newtown Township.

On August 30, 1978, the Water Company filed a petition to intervene and a protest to the Township's application. The Commission did the same. The matter was assigned to an Administrative Law Judge (ALJ) who granted both the Water Company (October 12, 1978) and the Commission (November 1, 1978) intervenor status.

Before the ALJ, the Water Company opposed the issuance of the certificate of public convenience arguing (1) that the 1874 Act does not provide a municipality with the statutory right to acquire just a portion of a public utility's integrated water supply which may serve more than one municipality and (2) that before issuing a certificate, the Commission was required to determine whether the proposed acquisition was in the public interest. The Water Company contended that the proposed acquisition was not in the public interest.

Conversely, the Township argued (1) that its right to the proposed acquisition was absolute and that there need not be any finding before the Commission issued a certificate of public convenience approving the application whether the acquisition was in the public interest and, (2) that if, in fact, a demonstration that the acquisition was in the public interest be required, then based upon the evidence this was shown. Following hearings and the submission of briefs the ALJ, by initial decision dated August 13, 1982 and issued September 1, 1982, determined that the Township, as a matter of law, had the right, pursuant to the 1874 Act, to initiate an application to acquire that por-

tion of the Water Company's property lying within the Township. However, the ALJ determined that the Township's right was qualified by the Public Service Company Law, Act of July 26, 1913, P.L. 1374 which required that a municipality obtain a certificate of public convenience before any acquisition took place,[2] and that obtaining the certificate necessitated a showing that the acquisition would be in the public interest. The applicable language of the relevant statute provides:

> Upon the application of any public utility and the approval of such application by the Commission, evidenced by its certificate . . . , and upon compliance with existing laws, it shall be lawful [f]or any public utility . . . to acquire from, or to transfer to, any person or corporation, including a municipal corporation by any method or device whatsoever. . . .

> A certificate of public convenience shall be granted by order of the Commission, only if the Commission shall find or determine that the granting of such certificate is necessary or

---

[2] Act of May 29, 1937, P.L. 1053, 66 P.S. §§1101, *et seq.*, provided in part, as follows:

Section 202 (66 P.S. §1122). *Enumeration of acts requiring certificate*

Upon approval of the commission, evidenced by its certificate of public convenience first had and obtained and upon compliance with existing laws, and not otherwise, it shall be lawful:

. . . .

(e) For any public utility, except a common carrier by railroad subject to the Interstate Commerce Act, to acquire from, or to transfer to, any person or corporation, including a municipal corporation, by any method or device whatsoever, including a consolidation merger, sale or lease, the title to, or the possession or use of, any tangible or intangible property used or useful in the public service.

proper for the service, accommodation, convenience or safety of the public. . . .

66 Pa. C. S. §1102.[3]

The ALJ found that the Township had demonstrated that the acquisition would be of substantial benefit to both the present customers of Middletown Township, and most of those customers of the Water Company located in Middletown Township who would be serviced by the Township's acquisition. Nevertheless, the ALJ determined that the acquisition would have an adverse effect on the Water Company's remaining customers located in Newtown Borough and Newtown Township, as well as the Water Company's commercial customers located in Middletown Township.[4] Consequently, the ALJ, after considering the interests of all affected parties, determined that the Township's application should be denied since it did not affirmatively promote the service, accommodation, convenience, or safety of the public in any substantial way. Both parties filed exceptions to the ALJ's initial decision. Those exceptions were subsequently denied by order on October 27, 1982. An appeal was taken by the Township to the Commission from the ALJ's ruling and order on the exceptions. On Febru-

[3] The Pennsylvania Legislature in 1978 adopted the Public Utility Code (66 Pa. C. S. §§101, et seq.) effective September of 1978 which in Sections 1102 and 1103 re-enacted the same provisions which appeared in Sections 202 and 203 of the Public Utility Law requiring Commission approval of a municipality's right to acquire the property of a water utility and requiring that such approval must be evidenced by a certificate of public convenience finding that such acquisition is necessary or proper for the service, accommodation, convenience or safety of the public. Since the Township's application was filed in June of 1978, the provisions of the Public Utility Law governed the proceeding.

[4] The ALJ's initial decision consisted of eighty-six pages of discussion of the case, thirty-seven findings of fact and thirteen conclusions of law.

ary 23, 1983, the Commission entered an order adopting the initial decision of the ALJ and dismissing the application of Middletown Township.

The Township, on March 23, 1983, filed a petition for review of the Commission's order (No. 786 C.D. 1983). On April 4, 1983, the Water Company filed a petition for review also (No. 912 C.D. 1983) seeking review of the February 23, 1983 order to the extent that it held that the Township has the statutory authority to initiate an application to acquire a portion of the water company's system. On April 15, 1983, the Commission filed a motion to quash the Water Company's petition for review for lack of standing. The Water Company also filed a notice of intervention in the Township's appeal at No. 786 C.D. 1983. These matters were subsequently consolidated by the Honorable JOSEPH T. DOYLE by order on April 15, 1983, placing the case in its present posture before this Court.

First, Middletown Township contends that the decision of the Commission denying the Township's application for a certificate of public convenience was based upon an improper application of the law to the facts. Our scope of review in an appeal from a Commission order is limited to a determination of whether constitutional rights have been violated, an error of law has been committed, or the findings or order of the Commission are not supported by substantial evidence. *Pennsylvania Electric Company v. Public Utility Commission,* 78 Pa. Commonwealth Ct. 402, 407, 467 A.2d 1367, 1370 (1983).

Middletown now contends, as it did before the ALJ and Commission, that the Township has an *absolute* right under the 1874 Act to acquire the facilities of the Water Company and that the sole function of the Commission in cases of this sort is to ascertain the appropriate price under the provisions of the 1874 Act and

determine whether the Township has the ability to pay that price. The Township maintains that once those determinations are made a certificate of public convenience must issue. The Township would have it that no public interest determination by the Commission is necessary or mandated under the law. For reasons to immediately follow, we disagree and believe that the law demands that such an acquisition of this type must be determined to be in the public interest by the Commission before a certificate may issue.

Prior to 1913, municipal corporations had the absolute right under the 1874 Act to acquire the gas or water facilities of a company which had been operating within its territory for twenty years. Under the 1874 Act, this acquisition was a two step process: (1) an initial mandamus action provided for the municipal corporation to have access to the records of the utility so as to determine the price to be paid and its ability or inability to finance the acquisition; and (2) if the utility refused to transfer its facilities at the proffered price, a second mandamus action would ensue to determine if the price was proper and, if proper, to compel transfer. *Williamsport v. Citizens' Water and Gas Company*, 232 Pa. 232, 81 A. 316 (1911).

In 1913 the Public Service Company Law (Act of July 26, 1913, P.L. 1374) (1913 Act) was enacted requiring that municipalities first obtain a certificate of public convenience from the Commission evidencing its approval of the proposed acquisition. The effect of this law on the acquisition rights of a municipality was noted in *New Brighton Borough v. New Brighton Water Co. et al.*, 247 Pa. 232, 93 A.2d 327 (1915), where the court explicitly stated:

 . . . [S]ince the Act of July 26, 1913, P.L. 1374, popularly known as the Utilities Act, this right [to acquire pursuant to the Act of 1874]

is *qualified* so that at the present time it cannot be exercised without first securing the approval of the Public Service Commission. (Emphasis added.)

*Id.,* 247 Pa. at 240, 93 A. at 330. Further, the court in *Borough of Reynoldsville v. Reynoldsville Water Company,* 247 Pa. 26, 92 A. 1082 (1915) stated:

It is a mistake to suppose that the act merely effected a change in procedure and was therefore retroactive. It operated directly upon the rights of a municipality by qualifying its right to acquire at its own pleasure the property of a water company within its limits.

*Id.,* 247 Pa. at 30, 92 A. at 1083.

The substantive meaning to be given to what constitutes ''approval'' of the Commission lies at the heart of the present controversy. The Township would have it that Commission approval is mandated once an acceptable price and the municipality's ability to pay that price are established. Thus Commission approval, in effect, would be a mere rubber stamp once a municipality decided to acquire a utility and demonstrated the financial ability to do so. We find such a situation to be contrary to statutory and case law in this area. The *New Brighton Borough* court stated:

One of the purposes of the Utilities Act was to furnish, in cases of the character of the one now before us, a more flexible procedure for ascertaining facts and reaching conclusions than were supplied by the set forms of pleading and procedure in the law courts. Article 3, Sec. 3, of the Statute, provides that *upon the approval of the Utilities Commission, evidenced by its certificate of public convenience "first had and obtained,"* and upon compliance with existing laws ''and not otherwise,'' it shall be lawful ''(d) for any municipal corporation to acquire

... any plant ... for rendering or furnishing to the public of any service of the kind or character already being rendered or furnished by any public service company within a municipality''; Article 5, Sec. 18, provides that "when application shall be made to the commission by any municipal corporation for the approval required by the provisions of Article 3, Sec. 3, (d), ... such approval ... shall be given *only if and when said commission shall find or determine that the granting or approval of such application is necessary or proper for the service, accommodation, convenience, or safety of the public''*; ... (Emphasis added.)

*New Brighton Borough*, 247 Pa. at 241, 93 A. at 330.

The requirement that in order for a municipality to acquire a company's assets under the 1874 Act it must first obtain a certificate of public convenience, and that such certificate will be issued *only if* the Commission determines that the public interest is being served by the acquisition finds unequivocal support in the applicable statutes and case law. Subsequent to the 1913 Act, the Public Utility Law (Act of May 28, 1937, P.L. 1053), (66 P.S. §1101, *et seq.*) provided in pertinent part:

Section 203 (66 P.S. §1103). *Procedure to obtain certificates of public convenience*

(a) Every application for a certificate of public convenience shall be made to the commission in writing, be verified by oath or affirmation, and be in such form, and contain such information, as the commission may require by its regulations. *A certificate of public convenience shall be granted by order of the commission, only if and when the commission shall find or determine that the granting of such certificate is necessary or proper for the service, accom-*

*modation, convenience, or safety of the public;*
and the commission, in granting such certifi-
cate, may impose such conditions as it may
deem to be just and reasonable. (Emphasis
added.)

*See also Pottstown Borough v. Pennsylvania Public
Utility Commission,* 144 Pa. Superior Ct. 220, 228, 19
A.2d 610, 613-14 (1941), (necessity of the Commis-
sion's approval of the right of a municipal corporation
to acquire the works, plant, and property of a water
company under the 1874 and 1913 Acts was not abro-
gated, but merely shifted to Section 202(e) of the 1937
Act which covers the transfer, by any method, of the
property of a public utility to a municipal corporation,
and thus embraces the acquisition by a municipal cor-
poration).

Thus, it is clear that under the 1937 Act and, sub-
sequently, under the Public Utility Code, it is neces-
sary for a municipal corporation such as Middletown
Township to secure Commission approval before it
may acquire under the 1874 Act the facilities and
property of a public utility located within its bound-
aries. See also *White Oak Borough v. Pennsylvania
Public Utility Commission,* 175 Pa. Superior Ct. 114,
121, 103 A.2d 502, 505 (1954).

This Court's review of the record and applicable
law indisputably indicates that a thorough consider-
ation of the benefits and detriments that will result
from an acquisition under the 1874 Act is both ad-
visable and mandated by the law. Further, when the
"public interest" is considered, it is contemplated
that the benefits and detriments of the acquisition be
measured as they impact on *all affected parties,* and
not merely on one particular group or geographic sub-
division as might have occurred in this case. We be-
lieve that the necessary analysis was judiciously
undertaken and performed by the Commission, and

that the contention that the issuance of a certificate of public convenience *without* a determination that the acquisition be in the public interest is also contrary to the well established principle that the primary objective of the law in this area is to serve the interests of the public. *Pittston Gas Company v. Pennsylvania Public Utility Commission*, 190 Pa. Superior Ct. 365, 154 A.2d 510 (1959).

Thus, the issuance of a certificate of public convenience amounting only to a pro forma administrative approval by the Commission, or the issuance of the certificate considering only the interests of Middletown Township or the Water Company's customers now located in Middletown Township would, in fact, be flagrantly shortsighted and contrary to law.

Similarly, we find that the ALJ did not abuse his discretion nor err as a matter of law by dismissing the Township's application for a certificate of public convenience without having determined the probable cost of acquisition. The Township contends that the Commission's determination of whether the acquisition was or was not in the public interest necessarily demanded that the probable cost of acquisition be calculated as part of that process. Such a determination, although an important part of the still viable 1874 Act, does not necessarily play a significant role, if any, in the public interest determination. When public utility property is sold either in an arms-length transaction or a forced acquisition, the compensation received under Section 34(7) of the Act of 1874 represents capital belonging to the utility and its stockholders, and not to the utility's customers, nor may those monies be transferred to the remaining customers in the form of lower rates. *Philadelphia Suburban Water Company v. Pennsylvania Public Utility Commission*, 58 Pa. Commonwealth Ct. 272, 427 A.2d 1244 (1981), citing *Board of Public Commissioners v. New York Tele-*

*phone Company*, 271 U.S. 23, 32, 46 S.Ct. 363, 366, 70 L.Ed. 808 (1926), (customers pay for service, not for the property used to render it; by paying . . . bills for service they do not acquire any interest, legal or equitable in the property used for their convenience or in the funds of the company). Under the facts of this case, there was no need for a determination of the price in order to decide whether the acquisition was in the public interest. The compensation would inure to the benefit of the stockholders and company itself, and have little, if any, direct impact on the Water Company's customers. Section 34(7) of the 1874 Act would have become operative when and if the determination was made that the acquisition was in the public interest. Until that determination was made it was entirely proper to exclude consideration of the acquisition price.

The Township next contends that the Commission's finding that the Township's proposed acquisition of the Water Company's facilities located within Middletown Township would have an adverse impact on the Water Company's remaining customers is not supported by the weight of the evidence and constitutes an abuse of discretion. It is clear that this Court may not exercise its independent judgment on the record or resolve conflicting evidence; rather our inquiry is directed to whether there is substantial evidence to support the Commission's action. *York v. Public Utility Commission*, 3 Pa. Commonwealth Ct. 270, 275-76, 281 A.2d 261, 263-64 (1971), *aff'd*, 449 Pa. 136, 295 A.2d 825 (1972).

The Township alleges that the Water Company would have been a far healthier company if it did not provide service to northern Middletown Township. While there is, as might be expected in such a lengthy adversary proceeding, evidence that supports the Township's position, our limited scope of review pre-

cludes us from reconsideration of matters heretofore resolved by the trier of fact. We will not indulge in the process of weighing evidence and resolving conflicts in testimony, but will defer to the fact finder's determinations unless there is no support for them in the record. *Lower Paxton Township v. Pennsylvania Public Utility Commission*, 13 Pa. Commonwealth Ct. 135, 139, 317 A.2d 917, 920 (1974). Upon a review of all of the testimony presented and the evidence introduced at the hearings before the ALJ we conclude that there was substantial evidence upon which the Commission could have concluded that the issuance of a certificate of public convenience to Middletown Township was not in the public interest. More specifically, there existed substantial evidence upon which to base a finding that an acquisition would have an adverse impact on the Water Company's remaining customers whose interest was to be protected and considered. Consequently, we can find no abuse of discretion, but rather a thorough and reasoned determination of the matters contested before the Commission.

We also reject the Township's contention that the relevant date for the Commission's consideration of what effect the acquisition would have on the Water Company and its remaining customers should be the date (June 23, 1978) on which the Township filed its application for a certificate of public convenience. This contention must be rejected both as unrealistic and contrary to the statutory and case law. At the time of the application the Water Company was servicing eighteen customers in Middleton Township while at the conclusion of the hearings held by the Commission the Water Company was serving 1,794 customers, 344 of those customers were located in Middletown Township.

The Water Company had an affirmative duty to provide service to those new customers since every

public utility is charged with furnishing and maintaining adequate, efficient, safe, and reasonable service and facilities to all applicants within its service territory. 66 Pa. C. S. §1501 (formerly 66 P.S. §1711). *See also Fairview Water Company v. Pennsylvania Public Utility Commission,* 55 Pa. Commonwealth Ct. 96, 422 A.2d 1209 (1980). The Commission received and thoroughly analyzed testimony and evidence concerning the past history, the present circumstances, and future projections of the services involved. The public interest demands no less in this circumstance. *See* 66 Pa. C. S. §1123.

Here there is a clear analogy to rate making cases where it has been stated:

We recognize the necessity, as a practical matter, for a cut-off date and the use of a base year in arriving at a final determination. But the Commission cannot be oblivious to recent figures in its own files supplied by the utility. The Commission is given discretionary power to make necessary adjustments to all estimates. But the adjustments must be based on evidence, and cannot be unfairly weighted in favor of either the utility or the consumer. *The Commission may not ignore recent information and evidence which substantially affect the problem before it.* Allowance must, of course, be made for property additions to the rate based. (Emphasis added.)

*City of Pittsburgh v. Pennsylvania Public Utility Commission,* 171 Pa. Superior Ct. 187, 209-10, 90 A.2d 607, 618 (1952).

Adoption of the proposition now urged by the Township, which would have the Commission disregard relevant events subsequent to the date of filing of the application, ignores the existence of the Water Company's statutory duty to provide service to all

customers within its territory. Furthermore, determinations based on outdated information and possibly irrelevant factors may have little or no applicability at the time the decision is rendered.

The Township's last allegation of error is that the ALJ abused his discretion and erred as a matter of law by issuing the initial decision and order prior to the date the Township was given to file an optional supplemental memorandum. Therefore, the Township contends that it was denied the opportunity to present competent evidence. We disagree. Our review of the record reveals that the *evidentiary* record was closed on October 9, 1981, at the conclusion of the final hearing before the ALJ and it cannot be contended that the Township was denied the opportunity to present evidence after the record had already been closed. Subsequently, by letter dated July 1, 1982, and addressed to the Water Company, the ALJ requested the Water Company to further brief one of the pertinent issues— the effect of the application on a hypothetical merger between the Water Company and Indian Rock/Newtown Artesian Water Company.[5] Copies of that letter were sent to the Township and the Commission. The letter requested a supplemental memorandum on this issue from the Water Company within thirty days and

---

[5] Indian Rock is a wholly owned subsidiary of Newtown Artesian, which uses the same offices, employees and management as Newtown Artesian, comprising one integrated system. Indian Rock was formed in the early 1970's, for the purpose of serving new residential housing developments so that all costs and investments to serve those new developments would not be borne by Newtown Artesian's existing customers. The ALJ, in considering the impact of the proposed acquisition, reviewed the possibility of a merger between Indian Rock and Newtown Artesian as a way to reduce costs to Newtown Artesian's remaining customers. The ALJ's discussion of this matter indicates that even if the merger occurred it would not mitigate the negative effect of the proposed acquisition on Newtown's remaining customers.

noted that any party could file a supplemental memorandum on the issue. A final paragraph of that letter added that any party could memoranda within thirty days of the original memorandum. On August 3, 1982, the Water Company filed a memorandum on the issue and on August 13, 1982, the ALJ rendered the initial decision. The Township argues that it did not have the opportunity to submit a memorandum on this subject prior to the decision. Even assuming there was an ambiguity on which date memoranda were to be filed on this issue, we find that there was no prejudice arising out of any confusion in this regard. It has been well settled that we will not disturb an order of the Commission for a harmless error.[6] *See Samuel J. Lansberry, Inc. v. Pennsylvania Public Utility Commission*, 66 Pa. Commonwealth Ct. 381, 444 A.2d 832 (1982).

Finally, the Water Company seeks review of the order entered by the Commission approving the dismissal of the Township's application for a certificate of public convenience insofar as that order contained a determination that Middletown Township has the legal right to acquire that portion of the Water Company's integrated water system located within the municipality upon a showing that the acquisition would be in the public interest. Our review of the statutory and decisional authorities, as well as the record in this case, convinces us that the petition for review filed by

---

[6] Furthermore, we have reviewed the initial decision of the ALJ and find that his response to the question regarding the hypothetical merger was based on evidence of record, and thus an allegation or intimation by the Township that the Water Company gained prejudicial advantage by the submission of their supplemental brief is unfounded. *See generally: Williams v. Department of Transportation*, 64 Pa. Commonwealth Ct. 153, 468 A.2d 547 (1983); *County of Allegheny v. Wilcox*, 76 Pa. Commonwealth Ct. 584, 465 A.2d 47 (1983).

the Water Company must be dismissed since the Water Company clearly lacks standing to raise this question. The Water Company contends that it has standing pursuant to Rule 501 of the Pennsylvania Rules of Appellate Procedure and Section 702 of the Administrative Agency Law.

Rule 501 defines those parties who may take or participate in appeals:

Rule 501. Any aggrieved Party May Appeal

Except where the right of appeal is enlarged by statute, any party who is aggrieved by an appealable order, or a fiduciary whose estate or trust is so aggrieved, may appeal therefrom.

Note: Whether or not a party is aggrieved by the action below is a substantive question determined by the effect of the action on the party, etc.

Amended Dec. 11, 1978, effective Dec. 30, 1978.

Section 702 of the Administrative Agency Law, 2 Pa. C. S. §702, states:

§702. Appeals

Any person aggrieved by an adjudication of a Commonwealth agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure).

Both of the aforementioned provisions explicitly require that the party bringing the action be ''aggrieved''. We believe that the Water Company is not an aggrieved party as the case law interprets that term. The Supreme Court in *William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975), held that there are three requirements to determine the question of standing: (1) the

party must have a substantial interest which has been adversely affected by the challenged order, meaning that there must be a discernible adverse impact to some interest other than the abstract interest of all citizens in having others comply with the law. *William Penn*, 464 Pa. at 192, 195, 346 A.2d at 280, 282; (2) the party's interest must be direct, that is the harm to its interest must be shown by the matter of which the party complains. *Id.*, at 195, 346 A.2d at 282; and (3) the party's interest must be immediate and not a remote consequence of an order. *Id.*, at 197, 346 A.2d at 283. [*See also: Official Court Reporters of the Court of Common Pleas of Philadelphia County v. Pennsylvania Labor Relations Board*, 67 Pa. Commonwealth Ct. 256, 446 A.2d 1357 (1982).]

The Water Company, after requesting and being granted intervenor status, successfully opposed the Township's application for a certificate of public convenience. It is well settled that a party may not appeal from a decision which is not adverse to him. *Pierro v. Pierro*, 434 Pa. 131, 252 A.2d 652 (1969). Nevertheless, the Water Company claims an adverse effect upon its property interest because the Commission's order contained a conclusion of law that the Township has the legal right to acquire a portion of the Water Company's property upon a showing that the acquisition would be in the public interest.

Although we recognize the existence of the Water Company's property interest, it has failed to show, nor does our review reveal, how the Commission's order substantially, directly, and immediately, adversely affected that interest. See *William Penn*, 464 Pa. at 194-97, 346 A.2d at 282-83. Mere disagreement with the Commission's legal reasoning or conclusions of law, as is the case here, does not confer standing upon the Water Company. See *D. Prior v. Eddystone*, 30 Pa. Commonwealth Ct. 536, 374 A.2d 981 (1977).

Similarly, the Water Company's assertion that its interest may be adversely affected in the future, *e.g.*, when and if the Township should again apply for and be granted a certificate of public convenience, does not amount to a cognizable aggrievement so as to confer standing upon the Water Company. *See In Re: Central Storage and Transfer Company of Harrisburg and W. C. McQuaide, Inc. et al. v. Pennsylvania Public Utility Commission*, 82 Pa. Commonwealth Ct. 21, 477 A.2d 568 (1984), (standing denied where petitioners failed to show how the Commission's disposition adversely affected their substantial interests, but rather only attacked the rationale or standards proposed to be employed by the Commission, asserting that the application of those standards could in the future effect their interest).

Accordingly, we deny the Water Company's standing to challenge an order which was favorable to it, and quash its petition for review in this regard.

### Order in 786 C.D. 1983

And Now, September 21, 1984, it is ordered that the order of the Pennsylvania Public Utility Commission, entered February 23, 1983, be affirmed.

### Order in 912 C.D. 1983

And Now, September 21, 1984, it is ordered that the petition for review filed by The Newtown Artesian Water Company is hereby quashed.