594 A.2d 816

**Edward J. LYNCH, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted April 25, 1991.

Decided June 27, 1991.

---

600

Edward J. Lynch, pro se.

Alan Kohler, for respondent.

Thomas P. Gadsden, for intervenor.

Before McGINLEY and KELLEY, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Edward J. Lynch (Lynch) appeals an order of the Pennsylvania Public Utility Commission (Commission) which dismissed his complaint against Philadelphia Suburban Water Company (PSWC). We affirm.

Lynch owns an unimproved residential lot which resulted from his subdivision of land upon which his former residence was situated. The unimproved lot fronts on Walnut Street between Clifton and Glenwood Avenues. PSWC has water mains under both Clifton and Glenwood Avenues, but no company-owned main runs under Walnut Street.[1]

Lynch was unsuccessful in his attempts to sell his unapproved lot because it lacked sewer and water service. In 1985 Lynch requested an estimate from PSWC of the cost to provide water service to the lot. In 1986 Lynch filed a formal complaint with the Commission, but the complaint was subsequently withdrawn because the parties agreed to a mutually acceptable price for installment of a main extension. A letter of agreement was signed. Unfortunately for Lynch, he was unable to solve other problems relating to the property but having nothing to do with water service,

1. Three houses on Walnut Street are served by a one and one-half inch private service line (Walker line), located in the public right of way of Walnut Street. The Walker line was installed in 1954, prior to the adoption of PSWC's tariff prohibiting private service lines over intervening property.

and he allowed the effectiveness of the PSWC agreement letter to lapse in November 1988.

When PSWC refused to extend the agreement, Lynch filed another formal complaint with the Commission. This latter complaint seeks the following alternative remedies: 1) an extension of the water main at PSWC's expense; 2) permission to install a private line serving the property; 3) an order directing PSWC to condemn the Walker line and extend it at PSWC's expense; and 4) a reduction of the amount that he would be obligated to pay if the main is extended to the property.

After the hearing, the Administrative Law Judge (ALJ) issued an initial decision dismissing Lynch's complaint. The ALJ also ordered PSWC to supply for the record a calculation of the amount Lynch would have to pay for the extension pursuant to the tariff. Additionally, Lynch was directed to notify the Commission of his election of alternative methods of payment. Lynch filed exceptions to the ALJ's decision which were denied by the Commission. This appeal followed.[2]

Lynch raises the following issues for our review: 1) whether the utility's tariff provision establishing a deposit/refund rule covering the cost of constructing main extensions is reasonable; 2) whether the utility was discriminatory in determining Lynch's contribution to cost for the construction of the main extension; and 3) whether evidence of the estimated construction costs (labor costs) was credible. These arguments are meritless.

■ Section 1501 of the Public Utility Code (Code),[3] provides in pertinent part as follows:

2. In reviewing a Commission order, this Court must determine whether the findings, order, or determination are supported by substantial evidence, an error of law was committed, or constitutional rights were violated. *Keystone Water Company v. Public Utility Commission*, 100 Pa.Commonwealth Ct. 644, 515 A.2d 367 (1986).

3. 66 Pa.C.S. § 1501.

**Character of service and facilities**

Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employees, and the public. Such service also shall be reasonably continuous and without unreasonable interruptions or delay. Such service and facilities shall be in conformity with the regulations and orders of the commission. Subject to the provisions of this part and the regulations or orders of the commission, every public utility may have reasonable rules and regulations governing the conditions under which it shall be required to render service.

It is well settled that a utility must bear the expense for repairs and improvements based upon the statutory requirement that a utility provide reasonable and adequate service. *Huntingdon, Inc. v. Pennsylvania Public Utility Commission*, 76 Pa.Commonwealth Ct. 387, 464 A.2d 601 (1983). However, participation by the customer may reasonably be expected. *Id.* Furthermore, since Lynch alleges the unreasonableness of the utility's rule or regulation, he has the burden of establishing this unreasonableness. 66 Pa.C.S. § 332(a). The Commission found Lynch did not meet this burden.

Lynch's argument centers upon what would be most financially advantageous to him. He asserts that his extension request is reasonable and will have no impact on the utility's other customers or on its rate of return, and, therefore, the utility should pay for the cost of the extension. Lynch cites *Ridley Township v. Pennsylvania Public Utility Commission*, 172 Pa.Superior Ct. 472, 94 A.2d 168 (1953) for this proposition. However, the *Ridley* court found certain circumstances in which customers may be required to participate in the cost of the construction of service extensions.

Ordinarily, it is not the business of the citizen or consumer to construct any part of a utility's system. There are, doubtless, instances where, under special circumstances, warranted by the evidence, the Commission may, in the exercise of its administrative discretion, withhold exercise of its power unless patrons offer to participate in the cost of construction.... But no inflexible rule can be laid down; participation in construction costs cannot be exacted indiscriminately; and it cannot be required upon a mere showing that an extension will not immediately produce an adequate profit. The action of the Commission must rest upon evidence which shows that, without the contribution or loan of the consumers, the cost of construction would materially handicap the utility in securing a fair return on all its operations.

*Id.*, 172 Pa.Superior Ct. at 478–79, 94 A.2d at 171. (Citations omitted).

Subsequent to *Ridley*, the Superior Court decided *Colonial Products Company v. Pennsylvania Public Utility Commission*, 188 Pa.Superior Court 163, 146 A.2d 657 (1958), wherein the Court held that contributions could be required when the benefits of a proposed improvement accrued primarily to that customer. The Commission has identified circumstances that require customer contributions. It is appropriate for customers to bear the cost of extensions when the extension is sought by a developer or when revenue from the extension is expected to be less than the utility's cost of construction. The ALJ found both circumstances to be present in this case.

Lynch is presently not a customer of the utility. He is not requesting service for his own use. In fact, he testified that his purpose in seeking service was to maximize his profit from the sale of the lot. Since there is no public necessity for the service requested and no assurance that the extension will result in a return of investment for the utility, Lynch must make it reasonable for the utility to extend its facilities by advancing the cost. He will, of

course, be entitled to refunds as provided in the utility's deposit/refund agreement provisions.[4]

■ Tariff provisions approved by the Commission, as in PSWC's tariff rules involved here, are prima facie reasonable. 66 Pa.C.S. § 316; *Zucker v. Pennsylvania Public Utility Commission*, 43 Pa.Commonwealth Ct. 207, 401 A.2d 1377 (1979). Determinations by the Commission concerning issues of the reasonableness of tariffs will not be disturbed by this Court if supported by competent evidence. *Zucker.* In fact, a review of the record shows that substantial evidence supports the ALJ's determination that Lynch did not sustain his burden of establishing that PSWC's tariffs were unreasonable.

■ We now turn to Lynch's allegation that the utility's tariff provisions are discriminatory as applied to him. Section 1502 of the Code[5] provides as follows:

No public utility shall, as to service, make or grant any unreasonable preference or advantage to any person, corporation, or municipal corporation, or subject any person, corporation or municipal corporation to any unreasonable prejudice or disadvantage. No public utility shall establish or maintain any unreasonable difference as to service, either as between localities or as between classes of service, but this section does not prohibit the establishment of reasonable classifications of service.

Lynch alleges discrimination in that he is providing the funds for the main extension and existing customers on Walnut Street will be able to tap into this main without providing a fair share of the expense. This is an incorrect statement of the tariff provision. The ALJ found that the expected remaining service life of the private Walker Line used by present Walnut Street residents is from 5 to 25

4. Pursuant to PSWC's Tariff Rule 53 the tax component of the advance will be refunded to Lynch in equal installments over a fifteen year period. Lynch will also be entitled to a refund of one-third of the revenues generated by each customer that takes service directly from the main extension during the succeeding fifteen years.

5. 66 Pa.C.S. § 1502.

years. Although it is clear that no existing customer of the utility requires a main installation in Walnut Street, the tariff rules provide for a reasonable opportunity for Lynch to recover a fair portion of his advance if the need to tap in arises. Furthermore, Lynch's contribution can be required because the benefit of the improvement will accrue mainly to him. *Colonial Products*. He has not met his burden of proof that the utility has applied its tariffs in an inconsistent manner. Therefore, there can be no finding of prohibited discrimination.

Lynch next alleges that the estimated construction costs submitted by PSWC lack credibility. He specifically charges that subcontractors fees are unreasonably inflated. PSWC's witness explained the labor components of the original estimate in 1985 and the newer 1989 estimate. He testified that the earlier figures did not differentiate between work done in developed and undeveloped areas. The later estimate, as stated by the Commission in its opinion, "was based on the unit charges charged by contractors where sidewalks and curbs have already been installed and the estimate was based on prices in a competitively bid contract by the contractor who would actually be doing the work." This differentiation between the two types of installation resulted in the higher cost.

The ALJ noted that PSWC did not have the burden of proving the reasonableness of its charges yet it presented substantial credible evidence that its estimates were reasonable. Since the ALJ found PSWC's evidence credible, "[w]e will not indulge in the process of weighing evidence and resolving conflicts in testimony, but will defer to the fact finder's determinations unless there is no support for them in the record." *Middletown Township v. Pennsylvania Public Utility Commission*, 85 Pa.Commonwealth Ct. 191, 205, 482 A.2d 674, 683 (1984). Our review of the record shows substantial evidence upon which the ALJ made her findings with regard to the main extension costs.

Based upon the foregoing discussion, the order of the Commission is affirmed.

## ORDER

AND NOW, this 27th day of June, 1991, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is hereby affirmed.